1      UNITED STATES DISTRICT COURT
      CENTRAL DISTRICT OF CALIFORNIA
2        EASTERN DIVISION

3

4  AARON ALAN FALLS,     )
              )
5       Plaintiff,   )
              )
6      vs.       )  Case No. 5:19-CV-02311-JWH-ADS
              )
7  ALYSSA VERNAL, ET AL.,  )  Santa Ana, California
              )  February 8, 2023
8       Defendants.  )

9

10

11          HEARING

12   BEFORE THE HONORABLE AUTUMN D. SPAETH
      UNITED STATES MAGISTRATE JUDGE

13

14
  APPEARANCES:      See Next Page
15

16  COURT REPORTER:    Recorded, CourtSmart

17  COURTROOM DEPUTY:   Kristee Hopkins

  TRANSCRIBER:     Dorothy Babykin
18             Courthouse Services
             1218 Valebrook Place
19             Glendora, California  91740
             (626) 963-0566
20

21

22

23  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
24

25

1

2
APPEARANCES:

3
FOR PLAINTIFF AARON ALAN FALLS:

4
BROWN RUDNICK LLP
BY:  TESS M. MESSIHA
       DAVID M. STEIN

5
       ATTORNEYS AT LAW
2211 MICHELSON DRIVE

6
7TH FLOOR
IRVINE, CALIFORNIA  92612

7

8
FOR DEFENDANTS ALYSSA VERNAL, ET AL.:

9

10
COLE HUBER LLP
BY:  NICOLE RENE ROGGEVEEN
       ATTORNEY AT LAW

11
2855 EAST GUASTI ROAD
SUITE 405

12
ONTARIO, CALIFORNIA  91761

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

I N D E X

3

5:19-CV-02311-JWH-ADS                              FEBRUARY 8, 2023

4

PROCEEDINGS:  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (143)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SANTA ANA, CALIFORNIA; FEBRUARY 8, 2023

2          THE CLERK:  THIS COURT IS NOW IN SESSION.  THE HONORABLE

3     AUTUMN D. SPAETH, UNITED STATES MAGISTRATE JUDGE, PRESIDING.

4          CALLING CASE ED CV 23 --19-2311-JWH-ADS, AARON ALAN FALLS

5     VERSUS ALYSSA VERNAL, ET AL.

6          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

7     RECORD.

8          MR. STEIN:  GOOD MORNING, YOUR HONOR.

9          DAVID STEIN FOR THE PLAINTIFF.

10         THE COURT:  GOOD MORNING.

11         MS. MESSIHA:  GOOD MORNING, YOUR HONOR.

12         TESS MESSIHA FOR THE PLAINTIFF

13         THE COURT:  GOOD MORNING.

14         MS. ROGGEVEEN:  GOOD MORNING, YOUR HONOR.

15         NICOLE ROGGEVEEN FOR THE DEFENDANTS.

16         THE COURT:  ALL RIGHT.

17         GOOD MORNING.

18         ALL RIGHT.  MS. ROGGEVEEN, YOU'RE THE MOVING PARTY.  THE

19    FLOOR IS YOURS.

20         MS. ROGGEVEEN:  WE'RE HERE TODAY BECAUSE WE FILED A

21    MOTION ON BEHALF OF DEPUTY PEREZ AND LIEUTENANT VERNAL, A

22    MOTION FOR SUMMARY JUDGMENT SPECIFICALLY REGARDING

23    PLAINTIFF'S CLAIMS UNDER THE EIGHTH AMENDMENT FOR DELIBERATE

24    INDIFFERENCE TO SAFETY AND MEDICAL LEAVE.

25         THE ALLEGATIONS AGAINST THEM ARE OUTLINED IN THE

1    OPERATIVE FOURTH AMENDED COMPLAINT.

2             THAT'S IMPORTANT BECAUSE THE MATERIALITY OF PARTICULAR

3    FACTS ON A MOTION FOR SUMMARY JUDGMENT IS DETERMINED BY THE

4    PLEADINGS AND THE SUBSTANTIVE LAW.

5             PLAINTIFF CAN'T RELY ON SPECULATION OR CONJECTURE.

6             IT CAN'T RELY ON ALLEGATIONS THAT HAVE BEEN PROVEN

7    INDISPUTABLY FALSE OR DEBUNKED.

8             HE CANNOT RELY ON SHAM DECLARATIONS MADE AFTER THE

9    FACT.

10            THE COURT:  MS. ROGGEVEEN, CAN I ASK YOU TO HOLD ONE

11   SECOND.

12            KRISTEE, WOULD YOU PLEASE I.M. CHRISTINE AND HAVE HER

13   SEND MIKE BACK.  I JUST REALIZED THAT THE RELEVANT LAW CLERK IS

14   NOT HERE.

15            (LAUGHTER.)

16            THE COURT:  I'M SORRY ABOUT THAT.

17            MS. ROGGEVEEN:  YOU'RE NOT GOING TO MAKE ME SAY THAT

18   OVER AGAIN.

19            (LAUGHTER.)

20            THE COURT:  YOU WON'T NEED TO START AGAIN, BUT LET ME

21   JUST STOP YOU BECAUSE IT IS IMPORTANT THAT HE IS HERE AS WELL.

22            (PAUSE IN PROCEEDINGS.)

23            UNIDENTIFIED SPEAKER:  -- HE'S ON HIS WAY.

24            THE COURT:  IT'S JUST ONE OF THOSE DAYS.

25            (LAUGHTER.)

1          THE COURT:  DID YOU GUYS GET CAUGHT UP IN THE TRAFFIC?  I

2  MEAN THE PEOPLE IN THE  -- THE COURTHOUSE TRAFFIC.  THERE WAS A

3  LOT OF PEOPLE HERE YESTERDAY.

4          NO?

5          MS. MESSIHA:  NO.

6          MS. ROGGEVEEN:  IT TOOK ME TWO HOURS TO GET HERE, SO.

7          THE COURT:  THAT'S THE OUTSIDE TRAFFIC, RIGHT?  YEAH.

8          NORMALLY, THIS BUILDING IS PRETTY QUIET.  BUT YESTERDAY IT

9  WAS A BIT OF A ZOO.

10          (PAUSE IN PROCEEDINGS.)

11          THE COURT:  THANK YOU.

12          ALL RIGHT.  SO, YOU'RE READY TO GO BACK ON THE RECORD.

13          ALL RIGHT.  MS. ROGGEVEEN, PLEASE CONTINUE.

14          MS. ROGGEVEEN:  MOREOVER, PLAINTIFF CAN'T CREATE

15  TRIABLE ISSUES OF FACT PRECLUDING SUMMARY JUDGMENT BY

16  ASSERTING A CLAIM THAT IS FACTUALLY IMPOSSIBLE AND CONTRADICTED

17  BY THE UNDISPUTED EVIDENCE.

18          SO, I'LL START WITH THE PLRA ISSUES SINCE THAT'S KIND OF A

19  INTRODUCTORY WAY TO BEGIN I GUESS THAT'S NECESSARY TO EVEN FILE

20  LITIGATION.

21          IT'S UNDISPUTED THAT AN ADMINISTRATIVE REMEDY EXISTED

22  HERE.  PLAINTIFF ADMITS THAT IT DID.  HE ADMITS THAT HE USED IT.  HE

23  USED IT QUITE FREQUENTLY.  AND HE OBTAINED THE REMEDIES THAT HE

24  REQUESTED VIA THAT SYSTEM.

25          IT IS UNDISPUTED THAT PLAINTIFF DID NOT EXHAUST THE

1     ADMINISTRATIVE REMEDY AVAILABLE TO HIM.

2            IT IS UNDISPUTED THAT NONE OF HIS GRIEVANCES ADDRESS

3     ANY OF THE CONDUCT AGAINST -- THAT'S ALLEGED AGAINST DEPUTY

4     PEREZ OR LIEUTENANT VERNAL IN ANY OF THE GRIEVANCES THAT HE'S

5     ALLEGING HERE IN THIS FOURTH AMENDED COMPLAINT.

6            IT IS ALSO UNDISPUTED THAT THERE IS -- THERE IS NO

7     EVIDENCE TO DISPUTE THAT THE ADMINISTRATIVE REMEDIES WERE

8     AVAILABLE TO HIM  -- MEANING HE HAS NOT PROVEN THAT THEY WERE

9     UNAVAILABLE TO HIM.

10           LET'S GO ON TO THE EIGHTH AMENDMENT CLAIMS AGAINST

11    DEPUTY PEREZ AND LIEUTENANT VERNAL.

12           AND WHAT I PLAN TO DO IS JUST GO THROUGH BRIEFLY THE

13    FACTUAL ALLEGATIONS IN THE FOURTH AMENDED COMPLAINT.

14           IN PARAGRAPH 9, PLAINTIFF ALLEGES THAT THE BUS DRIVER,

15    PEREZ, STRUCK ANOTHER VEHICLE FROM BEHIND WHILE RECKLESSLY

16    DRIVING DOWNHILL.

17           IT IS NOW UNDISPUTED THAT IT WAS NOT A REAR-END

18    ACCIDENT.  HE WAS NOT DRIVING RECKLESSLY.  HE WAS DRIVING WITHIN

19    THE SPEED LIMIT.  HE WAS NOT SWERVING IN AND OUT OF TRAFFIC.  AND

20    IT WAS NOT A DOWNHILL GRADE UNLESS YOU CONSIDER SOMETHING LIKE

21    1 PERCENT A DOWNHILL GRADE.

22           ALSO IN PARAGRAPH 9, PLAINTIFF ALLEGES THAT HE WAS

23    CHAINED TO TWO OTHER PEOPLE AT THE WAIST UNABLE TO SIT FULLY ON

24    HIS SEAT DUE TO HIS LARGER THAN AVERAGE SIZE.

25           IT IS NOW UNDISPUTED THAT HE WAS SITTING ON THE

1    PASSENGER SIDE OF THE BUS.  WE HAVE NO -- WE, THE COUNTY, HAS NO

2    BUSSES WITH THREE-MAN SEATS ON THE PASSENGER SIDE.  HE WAS NOT

3    CHAINED TO TWO OTHER INMATES.

4            NOT ONLY WAS HE NOT CHAINED TO TWO OTHER INMATES IN

5    THE INCIDENT ON OCTOBER 4, BUT HE ALSO ADMITS THAT HE WAS NOT

6    CHAINED TO TWO OTHER INMATES IN THE INCIDENT ON OCTOBER 12TH,

7    DESPITE HAVING PLED THAT IN HIS VERIFIED PLEADINGS OVER AND OVER.

8            PARAGRAPH 10, MR. FALLS REPEATEDLY PLED WITH DEPUTIES

9    INCLUDING DEFENDANT PEREZ TO REMOVE HIM FROM THE THREE-MAN

10   CHAINS.

11           IT IS UNDISPUTED, AGAIN, THAT HE WAS NOT IN THREE-MAN

12   CHAINS.

13           PARAGRAPH 10, DEPUTIES DESIGNATED HIS SEAT AS A

14   THREE-MAN SEAT.  IT IS UNDISPUTED THAT HE WAS NOT IN A THREE-MAN

15   SEAT.  HE WAS IN A TWO-MAN SEAT AT MOST WITH ONE OTHER INMATE.

16           PARAGRAPH 11, MR. FALLS FURTHER EXPLAINED TO THE

17   DEPUTIES THAT IF HE REMAINED IN THE THREE-MAN CHAIN HE WOULD BE

18   FORCED TO MAINTAIN A PRECARIOUS POSITION.

19           HE WAS NOT IN A THREE-MAN CHAIN.  WE HAVE PROVEN THAT

20   CONCLUSIVELY.

21           SAME PARAGRAPH, 11:  THE LACK OF LEG ROOM.

22           WE HAVE NOW PROVEN THAT CONCLUSIVELY HE DID HAVE LEG

23   ROOM.

24           WE HAD A BIOMECHANICAL ANALYSIS ALONG WITH AN ACCIDENT

25   RECONSTRUCTION ANALYSIS.

1          WE HAD A PERSON WHO WAS VERY SIMILAR, IF NOT ALMOST

2    IDENTICAL, TO THE SIZE OF MR. FALLS AT THE TIME.  AND THAT PERSON

3    HAD LEG ROOM.

4          SO, WE'VE PROVEN THAT IS NOW UNDISPUTED.

5          PARAGRAPH 17, MR. FALLS' BROKEN TOOTH WAS NOT

6    EXTRACTED UNTIL FIVE TO EIGHT DAYS AFTER THE ACCIDENT.

7          THE INCIDENT HAPPENED ON OCTOBER 4TH.  HIS TOOTH WAS

8    EXTRACTED ON OCTOBER 9TH.  SO, FIVE DAYS NOT SIX, SEVEN OR EIGHT.

9          SO, THE SAME SENTENCE, MR. FALLS' BROKEN TOOTH WAS NOT

10   EXTRACTED UNTIL FIVE TO EIGHT DAYS AFTER THE ACCIDENT, LEAVING

11   HIM IN EXTREME PAIN AND RESULTING IN A SEVERE TOOTH INFECTION.

12         IT IS UNDISPUTED THAT THERE WAS NO TOOTH INFECTION, LET

13   ALONE A SEVERE ONE.

14         PARAGRAPH 18 IS DEVOTED ENTIRELY TO LIEUTENANT VERNAL.

15         PARAGRAPH 18 ESSENTIALLY SAYS SHE TOLD ME I WAS LYING.

16         THAT ALLEGATION ALONE IS NOT SUFFICIENT TO ATTRIBUTE

17   EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO HER FOR

18   INTERFERING, DELAYING OR DENYING HIM MEDICAL TREATMENT.

19         IT IS UNDISPUTED THAT SHE DID NO SUCH THING.

20         PARAGRAPH 23, MR. FALLS DID NOT RECEIVE ADEQUATE

21   TREATMENT.

22         HE RECEIVED LOTS OF TREATMENT.  SO MUCH TREATMENT

23   THAT THEIR OWN EXPERT SAID NONE OF THE TREATMENT THAT HE

24   RECEIVED AFTER THE INCIDENT CAUSED OR CONTRIBUTED TO ANY OF HIS

25   -- AN EXACERBATION OF HIS ALLEGED INJURIES.

1    AND THAT'S IT.  THERE ARE NO MORE ALLEGATIONS OTHER

2    THAN WHAT THEY'VE NOW SET  -- WHAT PLAINTIFF HAS NOW SET FORTH IN

3    A DECLARATION AFTER THE FACT TO TRY AND DEFEAT SUMMARY

4    JUDGMENT.

5        BUT EVEN THE FACTS THAT ARE ALLEGED IN THAT

6    DECLARATION DON'T DEFEAT SUMMARY JUDGMENT IN THIS CASE.

7        AND THAT'S BECAUSE THE UNDISPUTED FACTS SHOW THAT

8    THERE WAS NO DELIBERATE INDIFFERENCE ON THE PART OF LIEUTENANT

9    VERNAL TO INTERFERE, DELAY OR DENY HIM MEDICAL TREATMENT.

10        THERE WAS NO DELIBERATE INDIFFERENCE ON THE PART OF

11    DEPUTY PEREZ FOR DELIBERATE INDIFFERENCE TO SAFETY.

12        AND PLAINTIFF FAILED TO COMPLY AND FAILED TO EXHAUST HIS

13    ADMINISTRATIVE REMEDIES, WHICH HE WAS FULLY AWARE OF.

14        DO YOU HAVE ANY QUESTIONS?

15        THE COURT:  YES, I DO.  THANK YOU.

16        IN THE EXHAUSTION ANALYSIS, WHAT EVIDENCE DO YOU RELY

17    ON TO ESTABLISH THE GRIEVANCE PROCEDURE?

18        MS. ROGGEVEEN:  THE EVIDENCE THAT I --

19        SO, IN THE EXHIBITS --

20        ONE SECOND.

21        (PAUSE IN PROCEEDINGS.)

22        MS. ROGGEVEEN:  IT'S THE GRIEVANCE PROCEDURE IS

23    OUTLINED WITH EXHIBIT 10 AND EXHIBIT 11, WHICH IS THE ARSDALE

24    POLICY 507.02.

25        AND THOSE POLICIES WERE AUTHENTICATED BY SERGEANT

1    YELENICH.  BUT THEY WERE ALSO DISCUSSED IN FULL DETAIL AT THE

2    DEPOSITION OF LIEUTENANT VERNAL.

3            SO, LIEUTENANT VERNAL ALSO, HER DEPOSITION TESTIMONY AS

4    A 30(B)(6).

5            THE COURT:  OKAY.  AND DO YOU ALSO RELY ON THE

6    ORIENTATION PAMPHLET?

7            MS. ROGGEVEEN:  SO, REPEAT THE ORIGINAL QUESTION.

8            THE COURT:  MY QUESTION WAS WHAT EVIDENCE DO YOU RELY

9    ON TO ESTABLISH THE GRIEVANCE PROCEDURE?

10           SO, IN OTHER WORDS, YOU KNOW, THE PROCEDURE THAT

11   EXPLAINS HE HAS TO FILL OUT A FORM.  HE HAS  -- YOU KNOW, SUBMITS

12   IT.  AND THEN THERE'S A  -- WE CALL IT THE LEVEL TWO APPEAL.  AT

13   LEAST THAT'S THE WAY I DESCRIBE IT.  AND THEN A LEVEL THREE APPEAL.

14           WHERE SHOULD I BE LOOKING FOR THAT EVIDENCE?

15           MS. ROGGEVEEN:  SO, THE INMATE ORIENTATION PAMPHLET IS

16   PROVIDED TO INMATES TO HELP EXPLAIN THE GRIEVANCE PROCESS.

17           SO, YES, THAT IS ALSO INCLUDED, WHICH I THINK IS  -- I WILL

18   TELL YOU  -- THE INMATE ORIENTATION PAMPHLETS FOR 2016 AND 2018

19   ARE INCLUDED IN  -- AS EXHIBIT 6 AND 7.

20           THE COURT:  OKAY.

21           NOW, IS THERE ANYTHING THAT WOULD CHANGE THE COURT'S

22   ANALYSIS FROM THE PRIOR ORDER ON THE MOTION TO DISMISS ON THE

23   ISSUE OF QUALIFIED IMMUNITY NOW THAT YOU'RE RE-BRIEFING IT?

24           SO, WHAT I WAS TRYING – WHAT I WAS TRYING TO GET IS I'VE

25   ALREADY SORT OF MADE A DECISION ON THE MOTION TO DISMISS.

1      WHAT MAKES THE SITUATION DIFFERENT, IF ANYTHING, THAT

2   WOULD CHANGE MY DECISION HERE ON SUMMARY JUDGMENT?

3      MS. ROGGEVEEN:  THE SITUATION HAS CHANGED BECAUSE WE

4   NOW KNOW CONCLUSIVELY THAT PLAINTIFF WAS NOT SEATED ON A

5   THREE-MAN BENCH SEAT.  HE WAS NOT CHAINED TO TWO OTHER

6   INMATES.

7      AND, SO, IN  -- IN MY ANALYSIS THAT WAS ONE OF THE ITEMS

8   THAT PLAINTIFF HAD SAID WOULD SUPPORT HIS DELIBERATE

9   INDIFFERENCE CLAIM BECAUSE HE PLED WITH DEPUTY PEREZ – EXCUSE

10  ME, TO REMOVE HIM FROM THAT.  AND THAT HE IGNORED HIM.

11     BUT IF HE WAS NEVER IN THAT SITUATION IN THE FIRST PLACE,

12  THEN, ONE OF THE ELEMENTS THAT THEY'RE ALLEGING AGAINST PEREZ

13  NO LONGER EXISTS.

14     IN FACT  --

15     (PAUSE IN PROCEEDINGS.)

16     MS. ROGGEVEEN:  -- PLAINTIFF ALLEGES IN PARAGRAPH 29 OF

17  HIS COMPLAINT – FOURTH AMENDMENT COMPLAINT.  EXCUSE ME.

18     PEREZ DID NOT TAKE REASONABLE AVAILABLE MEASURES TO

19  ABATE THE RISK OF SERIOUS HARM, SUCH AS REMOVING MR. FALLS FROM

20  THE 3-MAN CHAIN TO A 2-MAN CHAIN.

21     SO, AS PART OF THEIR ANALYSIS IN THE TOTALITY OF THE

22  CIRCUMSTANCES UNDER WHICH THEY ARE SAYING THAT DEPUTY PEREZ

23  SHOULD BE RESPONSIBLE AND LIABLE FOR A DELIBERATE INDIFFERENCE

24  TO SAFETY.   BUT THAT'S A VERY BIG PIECE.

25     THE COURT:  ALL RIGHT.

1    OKAY.  NOW, REGARDING NOTICE TO DEFENDANTS  -- I'M GOING

2    BACK TO THE EXHAUSTION ISSUE.

3    THE CASE LAW SEEMS TO SUGGEST THAT THE PRISONER NEEDS

4    TO NAME SPECIFIC -- NEEDS TO NAME SPECIFIC INDIVIDUALS IN A

5    GRIEVANCE FORM ONLY WHEN THE GRIEVANCE PROCEDURE OR THE

6    FORMS CALL FOR IT.

7    NOW, THE RIVERSIDE GRIEVANCE FORMS DON'T SEEM TO

8    REQUIRE THAT.  SO, IF THAT'S THE CASE ON A WAY YOU'RE BASING YOUR

9    ARGUMENT THAT PLAINTIFF'S GRIEVANCE FORMS LACK THE NECESSARY

10    LEVELS OF SPECIFICITY.

11    MS. ROGGEVEEN:  JUST A MOMENT.

12    THE COURT:  TAKE YOUR TIME.

13    (PAUSE IN PROCEEDINGS.)

14    MS. ROGGEVEEN:  SO, THE CASE LAW REGARDING NAMING THE

15    DEFENDANTS AND WHAT YOU'RE SAYING OBVIOUSLY IS CORRECT.

16    BUT THAT DOESN'T MATTER FOR PURPOSES OF OUR ANALYSIS

17    HERE.  THE COUNTY STILL WAS NOT PUT ON NOTICE OF WHAT PLAINTIFF

18    WAS GRIEVING ABOUT.  HE WAS NEVER  -- THEY WERE NEVER PUT ON

19    NOTICE ABOUT ANY ACTIONS BY LIEUTENANT VERNAL OR EVEN SOMEONE

20    HIGHER UP, YOU KNOW, A LIEUTENANT THAT WAS DOING SOMETHING TO

21    INTERFERE.

22    THERE WERE NO GRIEVANCES OR ALLEGATIONS TO PUT THE

23    COUNTY ON NOTICE THAT HE EVEN HAD A MEETING WITH HER.

24    THERE WERE NO GRIEVANCES OR ALLEGATIONS THAT DEPUTY

25    PEREZ DID ANYTHING.  ALL OF THE GRIEVANCES SAY I WAS IN AN

1    ACCIDENT.  I WAS IN A BUS ACCIDENT.

2              NONE OF THEM SAY HE WAS CHAINED TO MORE THAN ONE

3    INMATE AND THAT HE PLED WITH DEPUTIES TO REMOVE HIM.

4              NONE OF THEM SAY HE COULDN'T SIT PROPERLY ON HIS SEAT.

5              NONE OF THEM SAY DEPUTY PEREZ DID ANYTHING

6    SPECIFICALLY OR THAT THE DRIVER OF THE BUS DID ANYTHING

7    SPECIFICALLY.

8              THERE HAS TO BE SOME SORT OF NOTICE OR OPPORTUNITY

9    PROVIDED TO THE COUNTY TO INVESTIGATE WHAT THE GRIEVANCE IS

10   ABOUT.  ALL OF PLAINTIFF'S GRIEVANCES WERE ABOUT MEDICAL

11   TREATMENT AND HIS DISSATISFACTION WITH THE MEDICAL TREATMENT.

12             THEY HAD NOTHING TO DO WITH CONDUCT ON THE PART OF

13   PEREZ OR VERNAL.

14             THE COURT:  OKAY.

15             MS. ROGGEVEEN:  AND THAT --

16             THE COURT:  GO AHEAD.

17             MS. ROGGEVEEN:  SORRY.

18             THE COURT:  THAT'S OKAY.

19             DO YOU HAVE ANYTHING FURTHER?

20             MR. ROGGEVEEN:  YES.

21             SO THAT ISSUE I THINK WAS RAISED IN PEARSON VERSUS LOS

22   ANGELES COUNTY.

23             AND I THINK THE COURT HAD STATED OF THE ADMINISTRATIVE

24   GRIEVANCES PLAINTIFF FILED IN 2018 NONE CONTAIN ALLEGATIONS

25   INVOLVING PLAINTIFF'S CLASSIFICATION OR AN ASSAULT.

1    SO, IN THAT CASE IT SEEMED TO ME THAT THERE WERE ISSUES THAT

2    WERE NOT RAISED IN THE GRIEVANCES THAT WOULD HAVE PUT THE

3    COUNTY OR THE ENTITY ON NOTICE.

4              THE COURT:  ALL RIGHT.  THANK YOU.

5              NOW, IS IT  -- IT IS UNDISPUTED, RIGHT, THAT PLAINTIFF DIDN'T

6    FILE AN APPEAL OF ANY OF THE RELATED GRIEVANCES TO THE THIRD

7    LEVEL, RIGHT?  THERE'S THREE LEVELS OF APPEAL HERE OR I GUESS

8    THREE LEVELS OF THE GRIEVANCE.  YOU FILE THAT GRIEVANCE.  YOU

9    APPEAL TO THE SECOND LEVEL.  AND IF YOU'RE NOT HAPPY, YOU APPEAL

10   TO THE THIRD LEVEL.

11             IS THAT THE GRIEVANCE PROCEDURE HERE?

12             MS. ROGGEVEEN:  CORRECT.

13             THE COURT:  OKAY.

14             AND IS IT UNDISPUTED THAT THE PLAINTIFF NEVER APPEALED

15   ANY OF THESE TO THE THIRD LEVEL?

16             MS. ROGGEVEEN:  IT IS UNDISPUTED TO THE THIRD LEVEL.  I

17   ALSO BELIEVE THAT IT'S UNDISPUTED TO THE SECOND LEVEL, ALTHOUGH

18   I'M SURE THEY'LL ARGUE DIFFERENTLY.

19             THE COURT:  RIGHT.  OKAY.

20             NOW, IS IT NECESSARY FOR THE PRISONER TO APPEAL TO THE

21   THIRD LEVEL TO FULLY EXHAUST THE ADMINISTRATIVE REMEDIES IN THIS

22   CIRCUMSTANCE?

23             MS. ROGGEVEEN:  YES.

24             THE COURT:  OKAY.

25             ALL RIGHT.  THAT'S ALL I HAVE FOR NOW.

1        (PAUSE IN PROCEEDINGS.)

2        THE COURT:  GO AHEAD.

3        MS. MESSIHA:  THANK YOU, YOUR HONOR.

4        THERE ARE GENUINE DISPUTES OF FACT THAT NEARLY EVERY

5    TURN IN DEFENDANTS' MOTION.  AND NONE OF THOSE -- A MOTION --

6    EXCUSE ME, STATED IN THE MOTION SATISFY STANDARDS FOR GRANTING

7    SUMMARY JUDGMENT.

8        ALL THESE FACTS SUMMARY JUDGMENT IS ENTIRELY

9    INAPPROPRIATE ON THE ISSUE OF PRIORITY.   AS A THRESHOLD ISSUE

10    DEFENDANTS HAVE NOT CARRIED THEIR BURDEN TO SHOW THAT ANY

11    PERTINENT RELIEF WAS AVAILABLE TO MR. FALLS.

12        EVEN IF DEFENDANTS DID MEET THAT BURDEN, WHICH THEY DID

13    NOT, MR. FALLS EXHAUSTED ALL AVAILABLE REMEDIES.  MR. FALLS

14    FOLLOWED ALL THE GRIEVANCE PROCEDURES AND APPEALS

15    PROCEDURES THAT WERE INSTRUCTED TO HIM BY THE JAIL STAFF.

16        WHICH WAS TO  -- IF YOU WANT YOUR GRIEVANCE TO GO TO THE

17    NEXT LEVEL, ALL YOU NEED TO DO IS REFUSE TO SIGN.  MR. FALLS

18    FOLLOWED THOSE INSTRUCTIONS.  AND THAT REFUSAL WORKED IN A

19    PRIOR INCIDENT GRIEVANCE AND APPEAL IN MAY OF 2017.  WENT UP TO

20    THE LIEUTENANT LEVEL APPEAL, WHICH IS THE SECOND LEVEL OF

21    APPEAL.

22        HE HAD NOT RECEIVED ANY OF HIS APPEALS BACK  -- THE SIX

23    APPEALS AFTER HE REFUSED TO SIGN BEFORE HE WAS TRANSFERRED TO

24    STATE PRISON  SO, HE EXHAUSTED ALL OF HIS AVAILABLE REMEDIES.

25        IF THE COURT --

1          THE COURT:  I'M SORRY.  BEFORE  -- BEFORE HE ASSIGNS THAT

2     ONE APPEAL, DID HE APPEAL ANY OTHER GRIEVANCE?

3          MS. MESSIHA:  THERE'S A  -- THERE IS EVIDENCE, YOUR HONOR,

4     THAT ON ONE  OF HIS OTHER GRIEVANCES DURING THE 2016 AND 2018

5     TIMEFRAME HE WROTE APPEAL TO FIRST GRIEVANCE ON ONE OF HIS

6     GRIEVANCE FORMS.

7          BUT IN HIS DEPOSITION TESTIMONY HE WAS ASKED ABOUT

8     THAT.  AND HE EXPLAINED THAT THAT IS ONLY JUST TO BRING FURTHER

9     ATTENTION TO THE APPEAL.  HIS REFUSAL TO SIGN WAS THE ACTUAL

10    APPEAL.

11         THE COURT:  OKAY.

12         AND WHAT HAPPENED IN THAT GRIEVANCE SITUATION?

13         MS. MESSIHA:  THERE IS  -- I DON'T REALLY EXACTLY WHAT

14    HAPPENED, BUT IT WAS REFUSED.  AND I DON'T BELIEVE WE HAVE ANY

15    RECORD OF ANY OTHER FOLLOW-ON APPEAL OR REJECTION OR

16    ANYTHING LIKE THAT IN THE RECORD, YOUR HONOR.

17         THE COURT:  OKAY.

18         ALL RIGHT.  GO AHEAD.

19         MS. MESSIHA:  IF MR. FALLS DID NOT EXHAUST, HE'S EXCUSED

20    FROM DOING SO BECAUSE THE JAIL STAFF MISLED HIM ABOUT THE

21    PROPER APPEAL PROCEDURES.

22         MR. FALLS WAS TOLD TO APPEAL HIS GRIEVANCE.  ALL HE

23    NEEDED TO DO WAS REFUSE TO SIGN.  SO, HE DID  -- HE DID NOT  -- HE DID

24    NOT RECEIVE THE INMATE ORIENTATION MANUAL, WHICH HE WAS

25    SUPPOSED TO UPON BEING BOOKED INTO COUNTY JAIL IN NOVEMBER OF

1    2016.

2         HE ALSO ASKED TO RECEIVE THE MANUAL AFTER THAT

3    MULTIPLE TIMES.  AND STILL DID NOT RECEIVE THE MANUAL.

4         AND, SO, HE HAD NO WAY TO VERIFY THE ACTUAL APPEALS

5    PROCEDURES EXCEPT FOR WHAT HE WAS INSTRUCTED TO DO.

6         SO, HE FOLLOWED THOSE PROCEDURES AND THOSE

7    PROCEDURES DO NOT MATCH THE WRITTEN PROCEDURE.

8         THE COURT:  AND HE WAS BOOKED INTO RIVERSIDE  -- IF I

9    RECALL THE DEPOSITION TESTIMONY  -- I THINK IT WAS DEPOSITION

10   TESTIMONY.-- WHEN HE WAS BOOKED INTO RIVERSIDE COUNTY FACILITIES

11   AT LEAST 12 TIMES.

12        ISN'T THAT RIGHT?

13        MS. MESSIHA:  MANY TIMES.  YES, YOUR HONOR.

14        THE COURT:  OKAY.

15        AND, SO, HE DIDN'T RECEIVE AN ORIENTATION MANUAL OR AN

16   EXPLANATION OF THE GRIEVANCE PROCEDURES ON ANY OF THOSE 12

17   OCCASIONS?

18        MS. MESSIHA:  HE DID RECEIVE A GRIEVANCE MANUAL

19   SOMETIME PRIOR TO 2015 I BELIEVE BASED ON HIS TESTIMONY.

20        THE COURT:  OKAY.

21        SO, WHY IS THAT NOT SUFFICIENT TO PUT HIM ON NOTICE

22   ABOUT THE GRIEVANCE PROCEDURES?

23        MS. MESSIHA:  YES, YOUR HONOR.

24        SO, THE GRIEVANCE PROCEDURES CHANGE OVER TIME.  AND

25   ACTUALLY IN AROUND THE 2014 TIMEFRAME THERE WAS A CASE SIMILAR

1    TO OURS IN <u>SNYDER V. RIVERSIDE COUNTY</u>.

2            IN THAT CASE IT SAID THAT BEFORE -- THERE WAS A RULE

3    CHANGE IN 2014.  AND BEFORE THAT TIME ALL THAT THE INMATE NEEDED

4    TO DO WAS TELL THE DEPUTY THAT THEIR GRIEVANCE WAS NOT

5    RESOLVED AT THE INITIAL LEVEL.  AND THEY COULD REFUSE TO SIGN

6    ESSENTIALLY.   AND IT WOULD AUTOMATICALLY GO UP TO THE NEXT

7    LEVEL OF APPEAL.

8            SO, THAT WAS THE PROCEDURE PRIOR TO 2014.

9            AND SINCE HE DIDN'T RECEIVE AN INMATE MANUAL AFTER THAT

10   TIME  --

11           THE COURT:  OH, I THOUGHT YOU SAID HE RECEIVED ONE IN

12   2015.

13           MS. MESSIHA:  OH, POSSIBLY IN 2015.  HE DIDN'T REMEMBER

14   EXACTLY WHEN.  HE SAID BEFORE 2016 HE MAY HAVE RECEIVED ONE, BUT

15   HE COULDN'T RECALL EXACTLY WHICH  -- WHICH TIME.

16           SO, IT'S UNDERSTANDABLE THAT BOTH MR. FALLS AND THE

17   STAFF COULD BE UNDER THE IMPRESSION AT THAT TIME THAT THE

18   POLICY COULD HAVE BEEN THE SAME.

19           AND, SO, IT WAS UNDERSTANDABLE AND REASONABLE FOR HIM

20   TO RELY ON THEIR MISREPRESENTATIONS AND TAKING THEM AT THEIR

21   WORD SINCE HE DID NOT HAVE THE UPDATED VERSION OF THE MANUAL.

22           THE COURT:  OKAY.

23           MS. MESSIHA:  IF MR. FALLS DIDN'T EXHAUST AND WASN'T

24   EXCUSED, THE COURT HAS DISCRETION TO TOLL THE STATUTE WHILE HE

25   DOES SO.

1          THERE IS NOTHING PREVENTING THE COURT FROM DOING SO.

2          MR. FALLS HAS SHOWN DILIGENCE IN PURSUING HIS CLAIMS.

3     AND HE DESERVES HIS DAY IN COURT.

4          SUMMARY JUDGMENT MUST ALSO BE DENIED ON EIGHTH

5     AMENDMENT VIOLATIONS BY DEPUTY PEREZ.

6          IT'S UNDISPUTED THAT PEREZ DROVE THE BUS, THAT FALLS

7     WAS ON THE BUS.  THE BUS CRASHED AND THAT FALLS WAS INJURED.

8          NOW, PEREZ DOESN'T REMEMBER INTERACTING WITH MR.

9     FALLS.  FALLS DOES REMEMBER INTERACTIONS VERY CLEARLY AND

10    CONSISTENTLY.

11         SO, FOR PURPOSES OF SUMMARY JUDGMENT, MR. FALLS'

12    TESTIMONY IS ALSO UNDISPUTED.

13         MANY COURTS HAVE PRECLUDED SUMMARY JUDGMENT IN

14    SIMILAR CIRCUMSTANCES.

15          AND GENUINE DISPUTES OF FACT REMAIN  -- WHETHER PEREZ'S

16    ACTIONS OR OMISSIONS WERE DELIBERATELY INDIFFERENT TO MR FALLS'

17    SAFETY.

18         SO, THESE DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT

19    ON EIGHTH AMENDMENT FOR MR. PEREZ.

20         SUMMARY JUDGMENT IS SIMILARLY NOT APPROPRIATE FOR

21    EIGHTH AMENDMENT VIOLATIONS BY LIEUTENANT VERNAL.

22         THERE ARE GENUINE DISPUTES OF FACT ABOUT VERNAL'S

23    INTERACTION WITH MR. FALLS.

24         THE RECORD DOES SHOW THAT VERNAL VOLUNTARILY LOOKED

25    INTO MR. FALLS' MEDICAL CARE.  SHE VOLUNTARILY DECIDED TO

1    INTERVIEW MR. FALLS ABOUT THE CIRCUMSTANCES OF THE BUS CRASH

2    AND HIS MEDICAL CARE BECAUSE HIS MOTHER WAS CONCERNED ABOUT

3    IT.

4            SO, MR. FALLS TOLD VERNAL ALL THE EVENTS LEADING UP TO

5    THE BUS CRASH AND SUBSEQUENT MEDICAL CARE OR LACK OF MEDICAL

6    CARE THAT HE HAD RECEIVED.  AND HE SPECIFICALLY REQUESTED THAT

7    HE NEEDED ADDITIONAL MEDICAL CARE FOR HIS INJURIES, HIS SEVERE

8    INJURIES.

9            AND WHAT DID LIEUTENANT VERNAL DO WITH THAT

10    INFORMATION.  SHE DIRECTLY THREATENED HIS MEDICAL CARE.  SHE

11    SAID I DON'T BELIEVE YOU.  YOU'RE A LIAR.  YOU GOT THESE INJURIES

12    SOMEWHERE ELSE.  IT'S NOT OUR RESPONSIBILITY.  AND YOU'RE NOT

13    GOING TO GET THE MEDICAL CARE YOU'RE SEEKING.

14            SHE ALSO INSTRUCTED HER SUBORDINATES TO GIVE MR. FALLS

15    A HARD TIME UNTIL HE WAS TRANSFERRED OUT TO STATE PRISON, WHICH

16    THEY DID.

17            SO, EVEN IF SHE DID NOTHING, A FAILURE TO ACT WITH

18    KNOWLEDGE OF AN INMATE'S SERIOUS INJURIES HAS BEEN SHOWN TO

19    STRONGLY SUGGEST DELIBERATE INDIFFERENCE.  AND THAT'S IN

20    MC GUCKIN V. SMITH IN THE NINTH CIRCUIT, 1992.

21            SO, VERNAL HAD KNOWLEDGE AND THE CAPABILITY TO ASSIST

22    MR. FALLS WITH HIS MEDICAL CARE.  AND SHE HAD TESTIFIED THAT SHE

23    HAD TRIED TO DO SO IN PREVIOUS CASES WITH  -- IF SHE WAS ABLE WITH

24    PREVIOUS INMATES.  SO, SHE WOULD TRY TO GET EXPEDITED MEDICAL

25    CARE AS NEEDED BECAUSE SHE HAD A HIGH UP – SHE WAS IN A HIGH-UP

1     POSITION.

2          WITH MR. FALLS SHE VOLUNTARILY INTERVENED IN THAT

3     SITUATION AND EFFECTIVELY CREATED A DUTY TO ASSIST HIM.  AND SHE

4     DIDN'T -- AND WHERE SHE MAY HAVE DONE SOMETHING TO INTERFERE –

5     AND AFTER HIS INTERVIEW WITH LIEUTENANT VERNAL HE ONLY SAW TWO

6     NURSES.  AND HE FINALLY GOT HIS CT SCAN WHICH HAD BEEN

7     PREVIOUSLY  -- EXCUSE ME, PREVIOUSLY SCHEDULED FOR THE LAST TWO

8     AND A HALF WEEKS THAT HE WAS AT RIVERSIDE COUNTY.  THAT WAS THE

9     ONLY MEDICAL CARE HE RECEIVED.

10          SO, AT MINIMUM TRIABLE ISSUES OF FACT PRECLUDE SUMMARY

11     JUDGMENT AS TO LIEUTENANT VERNAL.

12          THE COURT:  COULD I ASK YOU, MS. ROGGEVEEN WENT

13     THROUGH A WHOLE BUNCH OF FACTS THAT SHE SAID RELATED TO THE

14     ALLEGATIONS IN THE COMPLAINT AND THE ACCIDENT THAT SHE SAID

15     WERE UNDISPUTED.

16          WOULD YOU ADDRESS THOSE FOR ME AND MAKE – MAKE SURE

17     THAT I UNDERSTAND WHICH OF THOSE FACTS YOU STILL IN FACT DO

18     DISPUTE.

19          MS. MESSIHA:  YES, YOUR HONOR.

20          SO, FIRST, SHE TALKS ABOUT THE ADMINISTRATIVE REMEDY

21     BEING UNDISPUTED.

22          AS I STATED, THERE'S A BURDEN ON DEFENDANT TO NOT ONLY

23     SHOW THAT THERE'S ADMINISTRATIVE PROCESS AVAILABLE BUT THAT

24     THERE'S SUBSTANTIVE RELIEF IN SOME FORM AVAILABLE TO MR. FALLS.

25          THERE'S NO  -- BEEN NO EVIDENCE PRESENTED BY

1    DEFENDANTS OF THE SUBSTANTIVE  -- POTENTIAL SUBSTANTIVE RELIEF

2    HE COULD GET FROM THE ADMINISTRATIVE PROCESS.

3          THE COURT:  AND WHAT DO YOU MEAN BY THAT.

4          MS. MESSIHA:  SO, YOUR HONOR, NOT ONLY IS SHE SUPPOSED

5    TO SHOW THAT THERE'S A PROCESS, WHICH WE DON'T DISPUTE THERE'S

6    SOME SORT OF PROCESS TO GRIEVE IN APPEAL, BUT THERE'S SUPPOSED

7    TO BE EVIDENCE OF WHAT POTENTIAL RELIEF COULD BE GAINED FROM

8    THAT PROCESS, WHETHER THAT'S MONETARY DAMAGES, WHETHER

9    THAT'S TRAINING, WHETHER THAT'S INVESTIGATION, THINGS LIKE THAT.

10         THE COURT:  AND WHAT CASE LAW OR  -- ARE YOU RELYING ON

11   FOR THE PROPOSITION THAT THEY'RE  -- THEY HAVE A BURDEN TO PROVE

12   A SPECIFIC TYPE OF REMEDY THAT IS AVAILABLE?

13         MS. MESSIHA:  YOUR HONOR, THERE'S BROWN V. VAYLOFF,

14   422 F. 3D 926 AT 936 TO 37.  IT'S NINTH CIRCUIT 2005.

15         AND IT'S DEFENDANT'S BURDEN TO SHOW THAT, ONE, THERE'S

16   AN AVAILABLE PROCEDURE.

17          AND, TWO, POTENTIAL TO DELIVER  -- THE POTENTIAL TO

18   DELIVER SUBSTANTIVE REMEDY.

19         SO, SHE JUST NEEDED TO PRESENT SOME SORT OF EVIDENCE

20   THAT HE COULD HAVE RECEIVED SOME REMEDY EVEN IF IT WASN'T THE

21   REMEDY THAT HE WAS SEEKING.  AND SHE DIDN'T  -- SHE DIDN'T DO SO.

22         IN DEFENDANT'S CLAIM MR. FALLS  -- IT'S UNDISPUTED THAT

23   MR. FALLS DID NOT EXHAUST HIS REMEDIES.  AND THAT'S VERY MUCH IN

24   DISPUTE.  MR. FALLS FOLLOWED THE PROCEDURES THAT WERE GIVEN TO

25   HIM BY THE JAIL STAFF.

1       HE DIDN'T HAVE AN INMATE MANUAL.  THE POLICY HAD

2    CHANGED AROUND THE TIME THAT HE WAS LAST INCARCERATED BEFORE

3    THE 2016 TIMEFRAME.  AND HE HAD NO OTHER WAY TO VERIFY THE

4    APPEALS PROCEDURE.

5       SO, HE EITHER EXHAUSTED AS MUCH AS WAS AVAILABLE

6    BECAUSE HE DID NOT RECEIVE HIS APPEALS BACK BEFORE HE WAS

7    TRANSFERRED TO STATE PRISON.  OR HE WAS MISLED.  AND, SO, HE WAS

8    EXCUSED FROM EXHAUSTING BECAUSE THEY WERE – THE PROCEDURES

9    WERE MADE EFFECTIVELY UNAVAILABLE TO HIM.

10       THE COURT:  IS IT UNDISPUTED THAT HE DIDN'T FILE AN APPEAL

11    TO GO TO THE THIRD LEVEL?

12       MS. MESSIHA:  YES, YOUR HONOR.  HE DIDN'T  -- IT'S

13    UNDISPUTED THAT HE DID NOT FILE THE THIRD-LEVEL APPEAL.  BUT THAT

14    WAS BECAUSE IT WAS UNAVAILABLE TO HIM.

15       THE COURT:  OKAY.

16       WHY IS IT UNAVAILABLE?

17       MS. MESSIHA:  BECAUSE HE WAS NOT GIVEN HIS APPEALS BACK,

18    YOUR HONOR, BEFORE HE TRANSFERRED TO STATE PRISON.

19       THE COURT:  AND WHY DID HE HAVE TO HAVE HIS APPEALS

20    BACK TO FILE A THIRD LEVEL OF APPEAL?

21       MS. MESSIHA:  BECAUSE IT'S A  -- IT'S A PROCESS THAT YOU FILE

22    -- WELL, I BELIEVE YOU START WITH AN INFORMAL TYPE OR A REQUEST.

23    AND YOU TALK WITH THE DEPUTIES.

24       THAT DOESN'T RESOLVE THE PROBLEM.  THEN YOU FILE A

25    GRIEVANCE FORM, THE STANDARD GRIEVANCE FORM.  IT HAS TO BE ON A

1    GRIEVANCE FORM.

2         THE COURT:  BUT HE GOT BACK SIX, RIGHT?  LIKE, THERE WERE

3    SIX THAT WERE RESOLVED  --

4         MS. MESSIHA:  THERE WERE SIX  --

5         THE COURT:  -- BEFORE HE LEFT?

6         MS. MESSIHA:  THERE WERE SIX THAT WERE GIVEN BACK FOR

7    THE INITIAL FINDINGS.

8         THE COURT:  OKAY.  SO, WHY WEREN'T  -- DIDN'T THOSE GET

9    APPEALED TO THE THIRD LEVEL?

10        MS. MESSIHA:  SO, HE REFUSED TO SIGN THEM.  AND THAT'S HIS

11   METHOD  -- THE KEY  --

12        THE COURT:  FOR APPEALING TO THE SECOND LEVEL  --

13        MS. MESSIHA:  YES, YOUR HONOR.

14        THE COURT:  -- BUT HOW ABOUT THE THIRD LEVEL?

15        MS. MESSIHA:  HE NEVER GOT THOSE BACK BEFORE HE WAS

16   TRANSFERRED.

17        SO, THERE WAS  -- HE HAD TO WAIT TO RECEIVE THE WORD

18   FROM LIEUTENANT BEFORE HE WAS ABLE TO THEN APPEAL TO THE

19   CAPTAIN.

20        THE COURT:  OKAY.  AND WHERE DO WE GET THAT FROM?

21        WHY DO WE BELIEVE THAT THAT IS THE REQUIREMENT THAT HE

22   HAD TO HAVE THAT PIECE OF PAPER BACK IN ORDER TO APPEAL TO THE

23   THIRD LEVEL?

24        MS. MESSIHA:  YOUR HONOR, THE INMATE IS REQUIRED TO

25   EXHAUST ALL REMEDIES AVAILABLE TO HIM IN ACCORDANCE WITH THE

1    POLICIES AND PROCEDURES OF THE PRISON OR THE JAIL.

2        IN THIS CASE FOR THE JAIL, THE PROCESS IS YOU FILE YOUR

3    INITIAL GRIEVANCE.  ONCE YOU GET THAT BACK YOU APPEAL IT.  YOU

4    HAVE SEVEN DAYS TO APPEAL IT.

5        THE LIEUTENANT HAS AN UNSPECIFIED AMOUNT OF TIME TO

6    REVIEW AND DECIDE THE OUTCOME OF THE -- OF THAT APPEAL.

7        THEN THEY GIVE IT BACK TO YOU.  AND THEN YOU CAN APPEAL

8    TO THE CAPTAIN WHO IS THE FINAL SAY.

9        SO, UNTIL YOU GET THAT WORD BACK FROM THE LIEUTENANT,

10    THEN, YOU'RE KIND OF JUST IN LIMBO WAITING.

11        THE COURT:  OKAY.  AND WHERE IS THE EVIDENCE THAT THAT'S

12    THE PROCEDURE?

13        MS. MESSIHA:  IT'S IN THE  -- IN THE GRIEVANCE PROCEDURE

14    MANUAL THAT  -- THAT DEFENSE COUNSEL STATED. THAT LAYS OUT THE

15    PROCEDURE, YOUR HONOR.

16        THE COURT:  OKAY.  SO  -- AND AS I UNDERSTAND WE'VE GOT  --

17    IT'S EXHIBIT 6 AND 7 ARE THE ORIENTATION PAMPHLET.  AND 10 AND 11

18    ARE THE POLICIES.

19        RIGHT?

20        MS. MESSIHA:  I BELIEVE SO, YOUR HONOR.  YES.

21        THE COURT:  OKAY.

22        AND I NOTICED THAT THERE  -- YOU DIDN'T FILE ANY

23    EVIDENTIARY OBJECTIONS WITH REGARD TO PRETTY MUCH ANY OF THE

24    ACTUAL EXHIBITS.

25        I MEAN, I KNOW YOU OBJECTED TO DECLARATIONS.  BUT YOU

1    DIDN'T OBJECT TO THE UNDERLYING EXHIBIT.

2            AND I BELIEVE THAT'S THE CASE FOR THESE FOUR EXHIBITS.

3            IS THAT CORRECT?

4            MS. MESSIHA:  YES, YOUR HONOR.

5            THE COURT:  OKAY.

6            SO, I JUST WANT TO MAKE SURE THAT YOU'RE NOT

7    CHALLENGING OR YOUR CLIENT IS NOT CHALLENGING THE USE OF THOSE

8    FOUR DOCUMENTS TO ESTABLISH WHAT -- ONE, THAT THEY'RE TRUE AND

9    CORRECT COPIES, RIGHT?

10           AND, TWO, THAT THEY ACCURATELY REPRESENT THE POLICIES

11   AND THE ORIENTATION MANUAL?

12           MS. MESSIHA:  WE'RE NOT DISPUTING THAT, YOUR HONOR.

13           THE COURT:  OKAY.

14           SO – BUT I GUESS ONE QUESTION I HAVE FOR YOU IS HOW --

15   HOW IS IT THAT YOUR CLIENT IS RELYING ON THOSE PROCEDURES TO

16   SAY THAT HE HAD TO HAVE A PIECE OF PAPER BACK IN ORDER TO FILE

17   THE THIRD LEVEL OF APPEAL WHEN HE'S CLAIMING HE DIDN'T KNOW

18   WHAT THOSE PROCEDURES WERE AND HE DIDN'T HAVE THEM.

19           MS. MESSIHA:  YES, YOUR HONOR.

20           SO, HE -- HE WAS NOT AWARE OF THE SPECIFICS OF THE

21   PROCEDURE AS WRITTEN.  BUT THE  -- THAT IS HOW IT WAS PRACTICED AS

22   WELL.  WHEN HE WAS TOLD TO REFUSE TO SIGN TO APPEAL, AND HE WAS

23   -- HE IN PRACTICE HAD WAITED UNTIL THE LIEUTENANT GOT

24   BACK TO HIM AT SOME TIME.  SOMETIMES IT WAS QUICKER.  AND I THINK

25   ONE TIME IT TOOK MONTHS FOR HIM TO GET BACK AND APPEAL MANY

1    YEARS PRIOR.

2            AND, SO, THAT WAS JUST HIS EXPERIENCE WITH THE

3    PROCEDURES AS PRACTICED.

4            THE COURT:  CAN YOU POINT ME TO THE PARAGRAPH IN YOUR

5    CLIENT'S DECLARATION OR THE DEPOSITION TESTIMONY OR WHATEVER

6    EVIDENCE ARE YOU RELYING ON THAT THE REASON HE DIDN'T FILE THE

7    THIRD LEVEL OF APPEAL WAS BECAUSE HE DIDN'T HAVE THE GRIEVANCE

8    FORM BACK IN ORDER TO FILE THE NEXT APPEAL.

9            (PAUSE IN PROCEEDINGS.)

10           MS. MESSIHA:  YOUR HONOR, I DON'T SEE SPECIFICALLY HIM

11   SAYING THAT.  HE RELIED ON THAT PROCEDURE NOT  -- FOR NOT

12   APPEALING TO A THIRD LEVEL.

13           THE COURT:  DID HE TESTIFY TO THAT IN HIS DEPOSITION?

14           MS. MESSIHA:  IN HIS DEPOSITION HE TALKS ABOUT WRITING TO

15   LIEUTENANTS AND CAPTAINS SOMETIMES IF HE WASN'T HEARING BACK.

16           THE COURT:  OKAY.

17           DO YOU ADMIT THAT IT'S NECESSARY FOR A PRISONER TO

18   APPEAL TO THE THIRD LEVEL TO FULLY EXHAUST HIS ADMINISTRATIVE

19   REMEDIES?

20           MS. MESSIHA:  YES, IF THOSE REMEDIES ARE AVAILABLE TO HIM,

21   YOUR HONOR.

22           THE COURT:  UNDERSTOOD.  OKAY.

23           OKAY.  SO, YOU SAID THAT THE REASON HE DIDN'T APPEAL TO

24   THE THIRD LEVEL WAS HE DIDN'T GET THE GRIEVANCE FORMS BACK IN

25   ORDER TO BE ABLE TO APPEAL TO THE THIRD LEVEL.

1        ARE THERE ANY OTHER BASES THAT YOU  -- THAT YOUR CLIENT

2    IS ASSERTING FOR WHY HE DIDN'T APPEAL TO THE THIRD LEVEL?

3        MS. MESSIHA:  THAT HE  -- THAT HE WAS TRANSFERRED BEFORE

4    HE COULD HAVE RECEIVED THEM BACK, YOUR HONOR.  AND THAT WOULD

5    HAVE MADE IT EXTREMELY DIFFICULT, AND NEARLY IMPRACTICABLE, FOR

6    HIM TO DO SO.

7        THE COURT:  OKAY.

8        WHY?

9        MS. MESSIHA:  WELL, HE WAS TRANSFERRED TO STATE PRISON.

10   SO, IT WASN'T THE SAME JAIL SYSTEM.  AND HE HAD TO ACTUALLY REACH

11   OUT TO THE JAIL ON A FEW OCCASIONS TO GET HIS MEDICAL RECORDS.

12   BUT IT JUST TAKES A LOT OF TIME.  AND HE WOULD NOT -- HE WOULD NOT

13   HAVE BEEN ABLE TO MEET THE DEADLINES FOR AN APPEAL ONCE HE WAS

14   EVER TO GET THAT BACK.

15       PARTICULARLY WITH THE LIEUTENANT LEVEL OF APPEAL

16   THERE'S A NON-SPECIFIED AMOUNT OF TIME WITH WHICH THE

17   LIEUTENANT HAS TO RETURN THAT.  SO, MAYBE HE WOULD HAVE HAD TO

18   CHECK PERIODICALLY TO SEE IF IT WAS EVEN AVAILABLE.  AND WE DON'T

19   KNOW WHAT WAS DONE WITH  -- WHAT WOULD HAVE BEEN DONE WITH

20   THOSE RECORDS IF IT HAD BEEN  --

21       THE COURT:  OKAY.

22       MS. MESSIHA:  -- COMPLETED.

23       THE COURT:  AND IS THERE ANY EVIDENCE IN THE RECORD THAT

24   I HAVE EXPLAIN THAT, SPECIFICALLY PROVIDING THOSE FACTS?

25       (PAUSE IN PROCEEDINGS.)

1    MS. MESSIHA:  MR. FALLS ALSO RELIES ON THE GRIEVANCE

2  POLICY AS IT STATES THAT A GRIEVANCE IS AN ALLEGATION OF ANY

3  CURRENT CONDITION OF CONFINEMENT.  AND THAT ONCE HE WAS

4  TRANSFERRED OUT OF THE JAIL, THAT IT WAS NO LONGER A CURRENT

5  CONDITION OF CONFINEMENT.

6    THE COURT:  WELL, HE WAS STILL INJURED, RIGHT?

7    MS. MESSIHA:  YES, YOUR HONOR.

8    THE COURT:  OKAY.

9    SO, WHY WOULDN'T IT BE A CURRENT CONDITION?

10    MS. MESSIHA:  A CURRENT CONDITION OF CONFINEMENT IN  --

11  WITHIN THE RIVERSIDE COUNTY JAIL SYSTEM, YOUR HONOR.  NOT IN  -- IN

12  PRISON.

13    THE COURT:  BUT IT SAYS INJURY  IF THE MEDICAL CONDITION

14  WAS PART OF IT, THE LACK OF TREATMENT.  HE DIDN'T GET TREATED

15  EXCEPT FOR HIS MRI I THINK YOU SAID OR TWO X-RAYS, SOMETHING LIKE

16  THAT AT THE RIVERSIDE COUNTY FACILITY.

17    MS. MESSIHA:  YES, YOUR HONOR.

18    THE COURT:  SO, THEN, IT WASN'T UNTIL – HE STILL HAD A LACK

19  OF MEDICAL TREATMENT ONCE HE WAS IN THE PRISON.  SO, IT WOULD

20  STILL BE A CURRENT EVEN UNDER THAT DEFINITION.

21    RIGHT?  -- WHICH WAS CAUSED BY ALLEGED  -- OF RECKLESS

22  DRIVING.

23    (PAUSE IN PROCEEDINGS.)

24    MS. MESSIHA:  YOUR HONOR, I WAS -- I RESPECTFULLY

25  DISAGREE A LITTLE BIT ABOUT THAT.

1          AND I THINK CONCURRENT CONDITION OF CONFINEMENT IS

2     LIMITED TO  -- IT'S LIMITED TO WHILE HE IS AT RIVERSIDE COUNTY, HE HAD

3     INADEQUATE MEDICAL CARE.

4          HE REQUESTED THAT HE ACTUALLY STAY -- HIS PRISON

5     SENTENCE BE STAYED A LITTLE BIT SO HE COULD RECEIVE ADDITIONAL

6     MEDICAL CARE AT RIVERSIDE COUNTY BEFORE BEING TRANSFERRED

7     BECAUSE HE HAD SEVERE INJURIES.

8          ONCE THEY DENIED THAT, AND HE WAS TRANSFERRED, IT

9     BECAME A PROBLEM FOR THE PRISON SYSTEM AND NO LONGER THE JAIL

10    SYSTEM.

11         THE COURT:  OKAY.

12         OKAY.  GO AHEAD.

13         MS. ROGGEVEEN:  I BELIEVE IT JUST ANY  -- ONE SECOND, YOUR

14    HONOR.

15         THE COURT:  THAT'S OKAY.

16         ONE QUESTION I HAD.  I SAW SOMETHING IN THE RECORD THAT

17    BESIDES THE ORIENTATION MANUAL AND THE TELEVISION STATIONS,

18    THAT THERE WERE FLYERS THROUGHOUT THE PRISON OR THE JAIL

19    EXPLAINING THE GRIEVANCE PROCEDURE.

20         DO YOU DISPUTE THAT?

21         MS. MESSIHA:  YES, YOUR HONOR.

22         WE – MR.   – MR. FALLS DOES NOT RECALL ANY OTHER METHOD

23    OR MANNER OF THE GRIEVANCE PROCEDURES BEING DISPLAYED OR

24    SHOWN TO HIM.

25         THE COURT:  OKAY.

1    (PAUSE IN PROCEEDINGS.)

2    MS. MESSIHA:  SO, SUMMARY JUDGMENT MUST ALSO BE DENIED

3 ON QUALIFIED IMMUNITY FOR BOTH PEREZ AND VERNAL.

4    QUALIFIED IMMUNITY EXISTS TO ALLOW FOR GOVERNMENT

5 OFFICIALS TO MAKE REASONABLE MISTAKES IN THEIR HIGH-PRESSURE

6 JOB SITUATIONS.  AND THAT'S NOT WHAT'S APPLICABLE HERE.

7    SAFETY AND ADEQUATE MEDICAL CARE, THOSE RIGHTS HAVE

8 BEEN CLEARLY ESTABLISHED.  AND THERE ARE GENUINE FACTS IN

9 DISPUTE ABOUT WHETHER LIEUTENANT VERNAL AND DEPUTY PEREZ'S

10 ACTIONS OR OMISSIONS HAVE VIOLATED MR. FALLS' EIGHTH AMENDMENT

11 RIGHTS.

12    AND, SO, SUMMARY JUDGMENT MUST BE DENIED ON THAT

13 BASIS.

14    THEREFORE, MR. FALLS RESPECTFULLY REQUESTS

15 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT  -- MOTION FOR

16 SUMMARY JUDGMENT BE DENIED.

17    THE COURT:  ALL RIGHT.  THANK YOU.

18    MS. MESSIHA:  ANY FURTHER QUESTIONS, YOUR HONOR?

19    THE COURT:  I DO.

20    THERE'S THIS ISSUE OF THE COPIES OF SOME OF THESE

21 GRIEVANCE FORMS BEING ATTACHED TO EARLY VERSIONS OF THE

22 COMPLAINT.

23    AND THE DEFENDANTS MAKE THE ARGUMENT THAT HOW IS

24 THAT POSSIBLE IF HE DIDN'T HAVE THEM.

25    SO, WHAT DO YOU KNOW ABOUT THAT?

1        MS. MESSIHA:  YES, YOUR HONOR.

2        SO, DEFENDANTS' COUNSEL BRINGS UP THE ORIGINAL

3    COMPLAINT UP TO THE THIRD AMENDED COMPLAINT WHICH ARE NOW

4    SUPERSEDED.  AND, SO, THE OPERATING COMPLAINT IS A FOURTH-

5    AMENDMENT COMPLAINT.

6        BUT THE WAY THAT THE EVIDENCE IS CONSTRUED THAT HE

7    ATTACHED COPIES IS NOT TRULY REFLECTIVE OF THE WAY THE PROCESS

8    WORKS FOR SUBMITTING YOUR GRIEVANCES.

9        SO, THE POLICY STATES THAT THE INMATE UPON SUBMITTING

10   THEIR INITIAL GRIEVANCE, THEY'RE SUPPOSED TO KEEP I BELIEVE IT'S

11   THE GOLDENROD COPY.  THERE'S FOUR LAYERS.  THEY KEEP ONE.

12       THE COURT:  DOES ANYONE KNOW WHAT GOLDENROD IS?  IS IT

13   A COLOR?

14       MS. ROGGEVEEN:  YELLOW.  YELLOWISH.

15       (LAUGHTER.)

16       THE COURT:  WHY DO THEY NOT JUST SAY YELLOW?

17       MS. ROGGEVEEN:  THAT'S A GREAT QUESTION.

18       MS. MESSIHA:  I THINK THERE'S A YELLOW  -- I THINK THERE'S A

19   YELLOW COPY, TOO, ACTUALLY.  SO.

20       THE COURT:  OH.

21       (LAUGHTER.)

22       MS. MESSIHA:  WHITE.  YEAH.

23       THE COURT:  AHH.

24       MS. MESSIHA:  IT'S LIKE A WHITE, PINK  --

25       THE COURT:  IT'S GOLD.  OKAY.

1    MS. MESSIHA:   -- YELLOW AND THEN GOLD.

2    THE COURT:  ALL RIGHT.  GOLDENROD.

3    MS. MESSIHA:  YES.

4    THE COURT: ALL RIGHT.  THANK YOU.

5    MS. MESSIHA:  SO, IN THEORY IN THE PER POLICY HE IS

6    SUPPOSED TO BE ABLE TO KEEP AN INITIAL RECEIPT.

7    HOWEVER, MR. FALLS HAS CONSISTENTLY TESTIFIED THAT IF HE

8    EVER TRIED TO TAKE OFF ONE OF THE LAYERS UPON INITIAL SUBMISSION,

9    IT'S REJECTED.  IT COULD BE THROWN IN THE TRASH IN FRONT OF HIM.

10    THE COURT:  UNDERSTOOD.  BUT – SO, HOW DOES HE HAVE

11    THEM TO ATTACH TO HIS COMPLAINT?

12    MS. MESSIHA:  YES, YOUR HONOR.

13    SO, WHEN HE GETS HIS INITIAL FINDINGS BACK, WHEN HE HAS

14    THE OPPORTUNITY TO SAY THE GRIEVANCE HAS BEEN RESOLVED OR

15    WHETHER HE WANTS TO APPEAL, HE DOES GET A COPY BACK.  SO, THAT

16    IS WHAT THAT COPY OF THE GRIEVANCE IS FROM  -- NOT FROM THE

17    INITIAL SUBMISSION.  IT'S FROM HIS INITIAL FINDINGS FROM A SERGEANT.

18    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19    I HAVE NO FURTHER QUESTIONS FOR YOU AT THIS TIME.

20    MS. MESSIHA:  YES, YOUR HONOR.

21    THE COURT:  MS. ROGGEVEEN.

22    MS. ROGGEVEEN:  I DON'T REALLY HAVE ANYTHING MUCH

23    FURTHER TO ADD OTHER THAN COUNSEL STATED WITH RESPECT TO

24    LIEUTENANT VERNAL, THE ALLEGATIONS AGAINST HER – THAT SHE MAY

25    HAVE DONE SOMETHING TO INTERFERE.  THAT'S WHAT THEY'RE PUTTING

1    FORTH AS THE EVIDENCE AGAINST HER, THAT SHE MAY HAVE DONE

2    SOMETHING.

3            THAT'S NOT SUFFICIENT FOR A DELIBERATE INDIFFERENCE

4    CLAIM TO  -- FOR INTERFERENCE, DELAY OR DENIAL OF MEDICAL CARE.

5            I THINK THAT THE QUESTIONS YOU ASKED COUNSEL ABOUT THE

6    GRIEVANCE PROCEDURE WERE ONES THAT I WAS GOING TO RAISE ABOUT

7    THE INMATE CHANNEL ABOUT THE FLYERS.

8            THE EVIDENCE -- THE UNDISPUTED EVIDENCE SHOWS THAT

9    THOSE THINGS WERE IN PLACE.

10           HE HAD A WAY TO VERIFY THE PROCEDURE.  HE TESTIFIED THAT

11    HE HAD THE MANUAL IN HIS POSSESSION PRIOR TO 2016.

12           THERE IS NO EVIDENCE THAT THE POLICY CHANGED.

13           IN FACT, LIEUTENANT VERNAL TESTIFIED AT HER DEPOSITION

14    THAT THE POLICY HAS ESSENTIALLY REMAINED THE SAME FOR YEARS

15    AND YEARS AND YEARS.

16           DO YOU HAVE ANY QUESTIONS?

17           THE COURT:  YEAH.  SO, I'D LIKE TO – CAN YOU  -- YOU HAVE

18    REVIEWED THE DECLARATION OF JESSICA YELINICH?

19           MS. ROGGEVEEN:  I DON'T HAVE IT WITH ME.

20           WHICH ONE?  -- THE ORIGINAL OR THE  --

21           THE COURT:  WELL, IT'S DOCKET 145.  IT'S THE ONE THAT'S

22    ATTACHED  -- I MEAN, IT'S THE ONE THAT IS SUBMITTED IN SUPPORT OF

23    THE MOTION.

24           I KNOW THAT THERE'S ONE THAT'S AN EXHIBIT, BUT.

25           MS. ROGGEVEEN:  I DON'T HAVE IT  --

1      THE COURT:  YOU DON'T HAVE IT IN FRONT OF YOU.  OKAY.

2      MS. ROGGEVEEN:  I DON'T.  I'M SORRY.  I BROUGHT TWO

3    BINDERS, BUT THAT'S INCLUDED.

4      THE COURT:  OKAY.

5      MS. ROGGEVEEN:  ARE YOU ASKING ABOUT WHERE SHE TALKS

6    ABOUT THE GIN SYSTEM?

7      THE COURT:  ACTUALLY, MY QUESTION FOR YOU IS HOW DO I

8    KNOW THAT SHE HAS PERSONAL KNOWLEDGE OR HAS FOUNDATION TO

9    CONFIRM FOR ME THAT THE EXHIBITS THAT SHE ATTACHES ARE TRUE

10   AND CORRECT COPIES.

11      SO, HER DECLARATION SETS OUT I HAVE ACCESS TO THE JAIL

12   DATABASE PERTAINING TO INMATE RECORDS AND FILES AS WELL AS

13   AUDIO RECORDINGS AND PHONE CALLS MADE.

14      SO THAT TO ME SETS FORTH A FOUNDATION REGARDING THAT

15   SORT OF LIMITED SET.

16      LUCKY FOR YOU THEY DIDN'T OBJECT.  BUT I DON'T SEE ANY

17   FOUNDATION IN HERE FOR CONFIRMING THAT THE ORIENTATION MANUAL

18   OR THE POLICIES ARE AUTHENTIC.

19      MS. ROGGEVEEN:  AND --

20      THE COURT:  THERE'S NOTHING IN HER DECLARATION THAT

21   GIVES ME A REASON TO KNOW THAT SHE'S SOMEBODY WHO WOULD

22   KNOW THAT THESE ARE TRUE AND CORRECT COPIES OR THAT THEY

23   ACCURATELY REFLECT WHAT THE POLICIES AND PROCEDURES WERE.

24      MS. ROGGEVEEN:  SO, EVEN IF WE PUT HER DECLARATION ASIDE

25   -- AND I REALIZE THAT THAT'S PROBABLY WHAT I PUT AS THE

1    AUTHENTICATION CITATION FOR THE EXHIBIT.

2            BUT THOSE POLICIES WERE EXPRESSLY IDENTIFIED BY THE

3    30(B)(6) WITNESS IN HER DEPOSITION.

4            THE COURT:  OKAY.  AND THAT'S VERNAL.

5            MS. ROGGEVEEN:  VERNAL --

6            THE COURT:  IS THAT RIGHT?

7            MS. ROGGEVEEN:   -- YES.

8            THE COURT:  DID YOU SPEAK WITH VERNAL  -- MS. VERNAL

9    ABOUT THAT THIRD LEVEL OF APPEAL DURING THE DEPOSITION OR DID

10   ANYONE ASK ABOUT THE THIRD LEVEL?

11           DO YOU REMEMBER?

12           MS. ROGGEVEEN:  I BELIEVE WE SPOKE  -- I BELIEVE THAT THERE

13   WERE A LOT OF QUESTIONS ABOUT THE ENTIRE PROCESS.

14           THE COURT:  OKAY.

15           MS. ROGGEVEEN:  AND I THINK THAT THERE WAS EXPLANATION

16   ABOUT THE SECOND AND THIRD LEVEL APPEALS.

17           THE COURT:  OKAY.  I'M GOING TO DOUBLE-CHECK THAT.

18           MS. ROGGEVEEN:  PLEASE DO.  I CAN'T OFF THE TOP OF MY

19   HEAD.  IT WAS A  --

20           THE COURT:  OKAY.  ONE OF THE THINGS I WANTED TO ALERT

21   YOU TO IS THAT YOU ARE VERY LUCKY THAT THEY DIDN'T OBJECT TO THE

22   EXHIBITS BECAUSE HER DECLARATION DOES NOT PROVIDE THE

23   FOUNDATION OR THE FACTS TO GET AROUND A HEARSAY OBJECTION FOR

24   THE VAST MAJORITY OF YOUR OBJECTION  -- OF YOUR EXHIBITS.

25           BUT THEY DIDN'T OBJECT.  AND THEY HAVE ADMITTED THAT

1     THESE DOCUMENTS CAN BE USED FOR THAT PURPOSE.

2             I JUST WANT TO HIGHLIGHT THAT FOR YOU BECAUSE I NOTICED

3     IN YOUR BRIEF YOU SAID THAT IT DID.

4             AND I JUST WANTED TO LET YOU KNOW THAT IT DOESN'T IN MY

5     OPINION.

6             NOW, WE CHECKED THE VERNAL DECLARATION -- DEPOSITION

7     TESTIMONY TO SEE IF SHE TESTIFIED TO IT.  AND YOU'RE RIGHT.  SHE

8     DOES TESTIFY TO A LARGE PORTION.  ALTHOUGH, I DIDN'T SEE ANYTHING

9     RELATED TO THE THIRD LEVEL.  BUT I'M GOING TO DOUBLE-CHECK THAT.

10            BUT HERE SINCE THERE DOESN'T SEEM TO BE ANY DISPUTE

11    REGARDING SOME OF THE DOCUMENTS THAT I THINK ARE THE MOST

12    IMPORTANT, I THINK YOU'RE GOING TO BE FINE.  BUT I JUST WANTED TO

13    WARN YOU ABOUT THAT IN THE FUTURE.

14            YOU HAVE TO EXPLAIN WHY THIS INDIVIDUAL HAS A REASON TO

15    KNOW THAT THESE DOCUMENTS ARE TRUE AND CORRECT COPIES, RIGHT,

16    BECAUSE WHAT IF SOMEBODY MISCOPIES SOMETHING.

17            AND THEN IF YOU'RE GOING TO RELY ON THAT DOCUMENT TO

18    SET FORTH THE PROCEDURES, I NEED SOMEBODY TO TESTIFY THAT

19    THESE DOCUMENTS ACCURATELY REFLECT WHAT THE POLICIES AND

20    PROCEDURES ARE, RIGHT?  -- OTHERWISE, IT'S HEARSAY.

21            AND THERE'S PROBABLY 40 OTHER EVIDENTIARY OBJECTIONS.

22            ALL RIGHT.  THAT COULD HAPPEN.

23            SO, THIS IS SOMETHING THAT I KNOW I MESSED UP WHEN I WAS

24    A YOUNG LAWYER.  AND I JUST WANTED TO LET YOU KNOW THAT

25    BECAUSE IT COULD HAVE BEEN CRITICAL IN THIS CASE.

1     AND I THINK HERE BECAUSE COUNSEL, YOU KNOW,

2  UNDERSTANDS THAT THESE DOCUMENTS ARE TRUE AND CORRECT AND

3  DIDN'T JUST TO MAKE EVIDENTIARY OBJECTIONS FOR THE PURPOSE OF

4  MAKING EVIDENTIARY OBJECTIONS BUT RATHER UNDERSTAND THAT

5  THEY'RE ACCURATE DOCUMENTS.

6     BUT HAD YOU HAD COUNSEL THAT WAS -- THAT DIDN'T

7  PRACTICE IN THAT SORT OF MANNER, YOU MAY HAVE LOST THIS MOTION

8  SIMPLY BASED ON FAILURE OF EVIDENCE.

9     ALL RIGHT.

10     I AM TAKING THIS MOTION INTO CONSIDERATION BECAUSE

11  THERE IS A LOT THAT YOU GUYS GAVE ME.  AND THERE IS A LOT HERE.

12     ALL RIGHT.  I WILL GET TO YOU A DECISION AS QUICKLY AS I

13  CAN.

14     ALL RIGHT.  IS THERE ANYTHING FURTHER?

15     MS. MESSIHA:  NO, YOUR HONOR.

16     MS. ROGGEVEEN:  NO, YOUR HONOR.

17     I APOLOGIZE AGAIN ABOUT THE BINDER.

18     THE COURT:  THAT'S OKAY.  I JUST APPRECIATE THAT YOU THINK

19  THAT YOU TRIED.  AND THAT YOU WILL IN THE FUTURE.

20     IT'S JUST I WANTED YOU TO SORT OF UNDERSTAND THE

21  PRACTICALITY OF WHAT WE DO --

22     (LAUGHTER.)

23     MS. ROGGEVEEN:  OF COURSE.

24     THAT'S A LOT --

25     THE COURT:  YEAH.

1          MS. ROGGEVEEN:  IT'S A LOT OF PAPER.

2          THE COURT:  ALL RIGHT.  THANK YOU SO MUCH.

3          MS. ROGGEVEEN:  SORRY.

4          MR. STEIN:  THANK YOU, YOUR HONOR.

5          MS. MESSIHA:  THANK YOU, YOUR HONOR.

6          THE COURT: HAVE A GOOD DAY.

7          (PROCEEDINGS ADJOURNED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              TRANSCRIBER'S CERTIFICATE

3                                    DISCLAIMER

4

5       THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6       DUE TO MUFFLED AND/OR UNCLEAR AUDIO TRANSMISSION OR LACK OF.

7       ATTORNEY IDENTIFICATION.

8               I, Dorothy Babykin, attest that the foregoing proceedings provided to me

9       electronically were transcribed by me to the best of my ability.

10                                              /s/   Dorothy Babykin

11                                              Dorothy Babykin

12

13      Date:   9/29/2023

14

15

16

17

18

19

20

21

22

23

24

25